**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 00-30874

JANE DOE, on behalf of David Doe,

Plaintiff-Appellee,

VERSUS

SCHOOL BOARD OF OUACHITA PARISH; ET AL

Defendants,

MURPHY J. FOSTER, III, in his official capacity as Governor of
Louisiana, also known as Mike Foster

Defendant-Appellant,

--------------------------

SUSAN DOE, on behalf of Janet Doe;
JOHN DOE, on behalf of Janet Doe,

Plaintiffs-Appellees,

VERSUS

MURPHY J. FOSTER, III, Etc; ET AL,

Defendants,

MURPHY J. FOSTER, III, in his official capacity as
Governor of Louisiana,

Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Louisiana

December 11, 2001

Before KING, Chief Judge, DUHE', and BENAVIDES, Circuit Judges.

DUHÉ, Circuit Judge:

Murphy J. Foster, III ("Foster"), in his capacity as Governor of Louisiana, appeals the district court's grant of summary judgment in favor of plaintiffs-appellees, and declaratory judgment that La. R. S. § 17:2115(A), La. Rev. Stat. § 17:2115(A) (West 1999), ("the statute") violates the Establishment Clause of the First Amendment to the Constitution of the United States, U.S. Const. amend. I, ("Establishment Clause"). We find that the statute violates the purpose prong of the Lemon test, Lemon v. Kurtzman, 403 U.S. 602, 91 S. Ct. 2105, 29 L. Ed. 2d 745 (1971), and under Wallace v. Jaffree, 472 U.S. 38, 105 S. Ct. 2479, 86 L. Ed. 2d 29 (1985), must be struck down without further inquiry. We therefore AFFIRM the decision of the district court.

FACTUAL AND PROCEDURAL BACKGROUND

As originally enacted in 1976, La. R. S. § 17:2115 required local school boards and parishes to permit school authorities to allow students and teachers to observe a "brief time in silent meditation" at the beginning of each school day. La. Rev. Stat. § 17:2115 (West 1976). In 1992 the provision, which had been renumbered as La. R. S. § 17:2115(A), was amended to allow observance of a "brief time in silent *prayer or* meditation". La. Rev. Stat. § 17:2115(A) (West 1992) (emphasis added). In 1999 the

Louisiana legislature passed, and Foster signed into law, an amendment deleting the word "silent" from the statute, so that it now reads:

> Each parish and city school board in the state shall permit the proper school authorities of each school within its jurisdiction to allow an opportunity, at the start of each school day, for those students and teachers desiring to do so to observe a brief time in prayer or meditation.

La. Rev. Stat. § 17:2115(A) (West 1999).

Plaintiffs-appellees are Ouachita Parish schoolchildren and their parents. They sought a declaration that the amended statute is unconstitutional, and an injunction ending the practice of verbal prayer at their schools. In its ruling on cross-motions for summary judgment, the district court found the statute unconstitutional, and granted plaintiffs-appellees' motion in part. Foster challenges this decision on appeal.[1]

## STANDING

Article III of the United States Constitution ("Article III") grants the federal courts jurisdiction over claims between plaintiffs and defendants only if they present a "case or controversy." This ensures that the power granted to the federal

---

[1] The district court did not grant the sought-after injunctive relief. However, on the basis of the constitutional ruling, the Ouachita Parish School Board ("School Board") agreed by Court Order ("Order") to cease the practice of verbal prayer in the schools "[u]ntil such time as the Court's ruling on the constitutionality of La. R. S. § 17:2115(A) becomes final." The Order will become final if the district court's decision striking down the statute is affirmed here. All that is before us is the district court's declaratory judgment that the statute is unconstitutional.

3

courts "is not an unconditioned authority to determine the constitutionality of legislative or executive acts." Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, 454 U.S. 464, 471, 102 S. Ct. 752, 758, 70 L. Ed. 2d 700 (1982).

In order to establish a case or controversy sufficient to give a federal court jurisdiction over their claims, plaintiffs must satisfy three criteria. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992). First, they must show they have suffered or are about to suffer an "injury in fact." Second, "there must be a causal connection between the injury and the conduct complained of." Third, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Id. (internal citations omitted). If any one of these elements – injury, causation, or redressability – is absent, plaintiffs have no standing in federal court under Article III to assert their claims.

In the case at bar, defendant Foster neglected to raise standing in district court, and the district court did not address it in its ruling. Foster also failed to brief standing to this court, and waited to raise it without any notice first in oral argument. This is not the first time the Louisiana Attorney General's office as a defendant has raised standing at oral argument without any notice to a panel of this court. We cannot overstate our displeasure with this backdoor litigation tactic. However, because standing is a jurisdictional question, see Flast

4

v. Cohen, 392 U.S. 83, 94-101, 88 S. Ct. 1942, 1949-53, 20 L. Ed. 2d 947 (1968), we must decide the issue. See also Fed. R. Civ. P. 12(h)(3).

Defendant's claim that plaintiffs lack standing is entirely without merit. The first prong of the Lujan test is "injury in fact". Impairments to constitutional rights are generally deemed adequate to support a finding of "injury" for purposes of standing. See Laird v. Tatum, 408 U.S. 1, 92 S. Ct. 2318, 33 L. Ed. 2d 154 (1972). This court held earlier this year that plaintiffs have standing to assert that their use or enjoyment of a public facility is impaired by an alleged violation of the Establishment Clause. See Doe v. Beaumont Indep. Sch. Dist., 240 F.3d 462, 466 (5th Cir. 2001). The case for standing is made stronger when the plaintiffs are students and parents of students attending public schools, who enjoy a cluster of rights vis-a-vis their schools, and thus are not merely "concerned bystanders." Id at 466-67. Moreover, the Supreme Court has repeatedly recognized the right of children and their parents to receive public education that is compliant with the Establishment Clause. See Sch. Dist. of Abington Township v. Schempp, 374 U.S. 203, 224 n.9, 83 S. Ct. 1560, 1572 n.9, 10 L. Ed. 2d 844 (1963); People ex rel. McCollum v. Bd. of Educ., 333 U.S. 203, 206, 68 S. Ct. 461, 462-63, 92 L. Ed. 649 (1948). Plaintiffs' allegation that the practice of verbal prayer in their schools violates their constitutional rights under the Establishment Clause and thus impairs their use of the schools is sufficient to fulfill

the injury prong of the <u>Lujan</u> test.

The second and third constitutional inquiries for standing are "causation and redressability". Plaintiffs must allege that the defendant's conduct caused the harm and that a favorable decision by the court will cure the harm. <u>See</u> <u>Allen v. Wright</u>, 468 U.S. 737, 751, 104 S. Ct. 3315, 3324-25, 82 L. Ed. 2d 556 (1984). In this case, evidence that the statute legitimizes or authorizes verbal prayer in schools will satisfy these prongs.

Such evidence is plentiful in the summary judgment record. School board members and school administrators have stated that a finding that the statute is unconstitutional would lead to the end of verbal prayer in schools. The plain language of the statute allowing verbal prayer also provides a causal link between it and the existing practice of verbal prayer in the schools.

The clearest evidence that verbal prayer in schools is an application of the challenged statute and that plaintiffs' injury is redressable by a declaration of the statute's unconstitutionality is the Order entered into between plaintiffs and the School Board after the district court's ruling. There, the School Board agreed to discontinue the practice of verbal prayer at the schools in question "until such time as the Court's ruling on the constitutionality of La. R. S. § 17:2115(A) becomes final." If the district court's finding of unconstitutionality becomes final, that Order becomes a final judgment of the court. If the district court's decision is reversed, the School Board may decide whether

to allow verbal prayer at the schools. This is a clear indication that the practice of verbal prayer at schools flows directly from the statute in question. Moreover, it is certain that a finding of unconstitutionality would redress the plaintiffs' injury, as it would convert the Order into a final judgment, thereby ending the practice of verbal prayer in their schools. For the above reasons, plaintiffs have standing to bring their claims in federal court, and we now review the district court's decision on the merits.

DISCUSSION

The district court granted plaintiffs-appellees' motion for summary judgment in part and found La. R. S. § 17:2115(A) unconstitutional. We review that decision de novo. See Weyant v. Acceptance Ins. Co., 917 F.2d 209, 212 (5th Cir. 1990), and we affirm. On the relevant merits, this case is virtually indistinguishable from Wallace v. Jaffree, 472 U.S. 38, 105 S. Ct. 2479, 86 L. Ed. 2d 29 (1985), where the Supreme Court held that the statute in question violated the first prong of the Lemon test and thus was unconstitutional.

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const., amend. I. These Religion Clauses are made applicable to the states through the Fourteenth Amendment. See Everson v. Bd. of Educ., 330 U.S. 1, 8, 67 S. Ct. 504, 508, 91 L. Ed. 711 (1947) (applying the Establishment Clause to the

7

states); <u>Cantwell v. Connecticut,</u> 310 U.S. 296, 303, 60 S. Ct. 900, 903, 84 L. Ed. 1213 (1940) (applying the Free Exercise Clause to the states).

The Supreme Court introduced a three-prong test to determine the constitutionality of a statute facing an Establishment Clause challenge in <u>Lemon v. Kurtzman</u>, 403 U.S. 602, 612-13, 91 S. Ct. 2105, 2111, 29 L. Ed. 2d 745 (1971). A constitutional statute must have a secular legislative purpose, its principal effect must neither advance nor inhibit religion, and it must not foster excessive government entanglement with religion. Failure of any prong of the test results in a finding of unconstitutionality, and the statute at issue here fails the first prong.

In order for a statute to survive a facial attack, "the legislature must have adopted the law with a secular purpose." <u>Edwards v. Aguillard</u>, 482 U.S. 578, 583, 107 S. Ct. 2573, 2577, 96 L. Ed. 2d 510 (1987). A statute will be found unconstitutional if it was "motivated wholly by an impermissible purpose," <u>Bowen v. Kendrick</u>, 487 U.S. 589, 602, 108 S. Ct. 2562, 2570-71, 101 L. Ed. 2d 520 (1988), or if the religious purpose "predominate[s]." <u>Edwards</u>, 482 U.S. at 599 (Powell, J., concurring). In making this evaluation, a court "asks whether government's actual purpose is to endorse or disapprove of religion." <u>Id.</u> at 585 (quoting <u>Lynch v. Donnelly</u>, 465 U.S. 668, 690, 104 S. Ct. 1355, 1368, 79 L. Ed. 2d 604 (1984) (O'Connor, J., concurring)). The Supreme Court has provided guidance on what evidence a court should consider in

8

evaluating whether the government's purpose is proper:

> A Court's finding of improper purpose behind a statute is appropriately determined by the statute on its face, its legislative history, or its interpretation by a responsible administrative agency. The plain meaning of the statute's words, enlightened by their context and the contemporaneous legislative history, can control the determination of legislative purpose. Moreover, in determining the legislative purpose of a statute, the Court has also considered the historical context of the statute, and the specific sequence of events leading to passage of the statute.

Id. at 594-95 (internal citations omitted).

In this case, there is no doubt that the 1999 amendment was motivated by a wholly religious purpose. It accomplished only one thing – the deletion of the word "silent" from a statute that authorized "silent prayer or meditation". The purpose of the amendment is clear on its face – it is to authorize *verbal* prayer in schools. In this respect, this case is virtually identical to Wallace v. Jaffree, 472 U.S. 38, 105 S. Ct. 2479, 86 L. Ed. 2d 29 (1985), which involved an Alabama statute that authorized a moment of silence "for meditation or silent prayer" in public schools, amending a previous statute allowing only meditation. The Supreme Court struck down that statute, holding that its purpose was to "return voluntary prayer" to the public schools, and that such a purpose is unconstitutional. Id. at 57, 60. In finding a religious purpose, the Court relied in part on the plain language of the amendment. The existing statute did not prohibit students from using the meditation period to engage in prayer, and the Court reasoned that this meant the words "or voluntary prayer" were added

9

to endorse and promote prayer. Id. at 47.[2] As in Wallace, the preexisting statute here already protected silent prayer. "Thus, only two conclusions are consistent with the text of [the statute]: (1) the statute was enacted to convey a message of state endorsement and promotion of prayer; or (2) the statute was enacted for no purpose". Id. at 59. The latter conclusion would be inconsistent with "the commonsense presumption that statutes are usually enacted to change existing law." Id. at 59 n.48.

The Court in Wallace also relied on legislators' statements at the time of the amendment's passage to confirm its religious purpose. See id. at 56-57; see also Edwards, 482 U.S. at 587, 591-92, 107 S. Ct. at 2579-80, 2581-82 (relying on legislators' contemporaneous statements to find religious purpose behind statute forbidding teaching of the theory of evolution in public schools unless accompanied by instruction in "creation science"). Here too, the legislative history confirms that the amendment was passed to return verbal prayer to the public schools. The amendment's sponsors stated that it was an instrument to allow verbal prayer in schools. Other legislators who supported the bill indicated that their understanding of the bill and their intent in seeking its

---

[2] Indeed, as stated by the Supreme Court in Santa Fe Indep. Sch. Dist. v. Doe, 530 U.S. 290, 313, 120 S.Ct. 2266, 2281 (2000), "nothing in the Constitution interpreted by this Court prohibits any public school student from voluntarily praying at any time before, during, or after the school day. But the religious liberty protected by the Constitution is abridged when the State affirmatively sponsors the particular religious practice of prayer."

passage was the same as that of the sponsors. Thus, as in <u>Edwards</u>, 482 U.S. at 604, 107 S. Ct. at 2588 (Powell, J., and O'Connor, J., concurring), there is "no persuasive evidence in the legislative history that the legislature's purpose was [not religious]."

The plain language and nature of the 1999 amendment as well as the legislators' contemporaneous statements demonstrate that the sole purpose of the amendment was to return verbal prayer to the public schools. This purpose runs afoul of the Establishment Clause, <u>see Wallace</u>, 472 U.S. at 40, 105 S. Ct. at 2481 and the Louisiana statute at issue here is therefore unconstitutional.

CONCLUSION

Because La. R. S. § 17:2115(A) was not adopted with a secular purpose, it violates the Establishment Clause and is unconstitutional. We therefore AFFIRM.