EDITH H. JONES, Circuit Judge,
concurring:
I concur fully in Judge Barbour’s opinion.[1] I write separately to respond to a few points made by Judge Davis in his dissent, even though the dissent touches only plaintiff Keeler’s standing.
I respectfully disagree with Judge Davis. His conceptualization of Keeler’s alleged injury would take us far afield from the requirements of Article III of the Constitution. As a general proposition, a plaintiff who complains merely that a benefit has been unconstitutionally granted to others is asserting only a “generalized grievance” that does not allow the plaintiff standing to obtain judicial relief for the alleged wrong in federal court. A plaintiff cannot have standing unless he or she alleges “personal injury fairly traceable to the defendant’s allegedly unlawful conduct and likely to be redressed by the requested relief.” Allen v. Wright, 468 U.S. 737, 751, 104 S.Ct. 3815, 3324, 82 L.Ed.2d 556 (1984). An allegation of discriminatory benefit favoring others, without more, cannot meet these requirements.
Part II of the dissent suggests that in a First Amendment facial challenge to a legislative enactment, Article Ill’s requirements of injury-in-fact, causation and re-dressability need not be met. But these requirements are not optional. “Those who do not possess Art. Ill standing may not litigate as suitors in the courts of the United States,” Valley Forge Christian College v. Americans United for Separation of Church and State, 454 U.S. 464, 475-76, 102 S.Ct. 752, 760, 70 L.Ed.2d 700 (1982); and injury-in-fact, causation and redressability are the three essential elements of the “irreducible constitutional minimum of standing” required by Article III. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992).[2] The requirements apply in First Amendment cases no less than in other cases,[3] including cases in which a plaintiff challenges an enactment on its face. See, e.g., Larson v. Valente, *385 456 U.S. 228, 233-86, 238-44, 102 S.Ct. 1673, 1677-79, 1680-83, 72 L.Ed.2d 33 (1982) (holding that plaintiffs had Article III standing to bring Establishment Clause challenge to statute as applied and on its face).[4]
Further, the cases cited in part II of Judge Davis’s dissent fail to support his argument. The plaintiffs in those cases actually met the requirements of Article III, including its redressability requirement.[5] This is not true of plaintiff Keeler, who seeks a remedy that would not redress her alleged injury.
Part III of the dissent argues that plaintiff Keeler’s challenge in this case to La. R.S. 47:463.61 meets the requirements of Article III. The two cases cited for this argument are distinguishable. In Orr v. Orr, 440 U.S. 268, 99 S.Ct. 1102, 59 L.Ed.2d 306 (1979), the appellant sought a ruling that he “not be required to pay alimony if similarly situated wives could not be ordered to pay.” Id. at 271, 99 S.Ct. at 1107. It was not clear whether he also sought alimony for himself. Id. & n. 2. The Supreme Court reversed an unfavorable state court ruling after concluding that Orr had standing to raise his challenge.
The Supreme Court noted that it was “possible” that a favorable ruling for Orr in the Court “will not ultimately bring him relief from the alimony judgment outstanding against him, as the State could respond to a reversal by neutrally extending alimony rights to needy husbands as well as wives.” Id. at 271, 272, 99 S.Ct. at 1108. Because the Court “ha[d] no way of knowing how the State w[ould] in fact respond” to a ruling striking down the state’s alimony laws, Orr had standing. Id. To hold otherwise would be “to hold that underinclusive statutes can never be challenged because any plaintiffs success *386 can theoretically be thwarted.” Id. (emphasis in original). The Court went on to say that “[t]he holdings of the Alabama courts stand as a total bar to appellant’s relief; his constitutional attack holds the only promise of escape from the burden that derives from the challenged statutes.” Id. at 273, 99 S.Ct. at 1108.
In Arkansas Writers’ Project, Inc. v. Ragland, 481 U.S. 221, 107 S.Ct. 1722, 95 L.Ed.2d 209 (1987), the Arkansas Writers’ Project, Inc. sought a refund of sales taxes it had paid, arguing that a statutory tax exemption must be extended to include a magazine that it published. Id. at 225, 107 5.Ct. at 1725. On appeal to the Supreme court, the state revenue commissioner argued that the Project lacked standing to challenge the tax scheme because its claimed injury could not be redressed by a decision of the Court. The Court rejected this view of standing, which “would effectively insulate underinelusive statutes from constitutional challenge, a proposition we soundly rejected in Orr v. Orr.” Ragland, 481 U.S. at 227, 107 S.Ct. at 1726 (citation omitted). In previous decisions, the Court said, it had “considered claims that others similarly situated were exempt from the operation of a state law adversely affecting the claimant.” Id. Quoting Orr’s “only promise of escape” language, the Court concluded that the Project had alleged an adequate personal stake in the outcome of the litigation. 481 U.S. at 227, 107 S.Ct. at 1726-27. The Court held on the merits that the Arkansas “tax” — not the exemption — violated the First Amendment. 481 U.S. at 234, 107 S.Ct. at 1730.
This case is different from Orr and Rag-land for at least two reasons. First, holding in favor of Keeler in this case would not merely present the “possibility” of a result that would not redress the wrong of which the plaintiff complains. If the relief requested by Keeler is granted, there is no possibility whatsoever that the relief will redress any constitutionally cognizable injury-of-fact of which she could be said to complain. Invalidating a statute that, on Keeler’s theory, allows third-party antiabortion speakers to exercise their First Amendment rights in a constitutionally protected forum will do nothing to help Keeler speak within that alleged forum.[6] The relief sought by Keeler cannot redress the constitutionally cognizable injury of which Keeler complains. Cf. Friends of the Earth, Inc. v. Laidlaw Environmental Servs. (TOC), Inc., 528 U.S. 167, 185, 120 S.Ct. 693, 706, 145 L.Ed.2d 610 (2000) (“a plaintiff must demonstrate standing separately for each form of relief sought”).
Second, Keeler’s constitutional attack does not “hold[] the only promise of escape from the burden that derives from the challenged statutes.” Keeler and the other plaintiffs in this action have challenged only La. R.S. 47:463.61, not the other Louisiana statutes that (either alone or viewed in conjunction with this statute) could be said to constitute the scheme that causes the alleged constitutional violation of which the plaintiffs complain. Only if Keeler challenged the broad scheme for specialty plates would she be in the same position as the appellant in Orr. Favorable redress could then result either in the state’s allowing her to place pro-choice sentiments on specialty license plates or in the state’s shutting down the alleged First Amendment forum by banning, or ceasing to sponsor, all specialty plates. But this is not Keeler’s aim.
*387 As a final note, Judge Davis’s view of standing would transform the First Amendment into a device for censorship rather than the enhancement of free speech. Under traditional free speech jurisprudence, the remedy for a speaker’s unjust exclusion from a forum is to admit the speaker, in other words, to afford Keeler access to specialty plates. Rosenberger v. Rector of the Univ. of Virginia, 515 U.S. 819, 828-30, 845-46, 115 S.Ct. 2510, 2516-17, 2524-25, 132 L.Ed.2d 700 (1995). Judge Davis’s acceptance of Keel-er’s concept of injury would lead instead to the removal of a single speaker — reflecting the anti-abortion viewpoint — from the forum, with no corresponding enlargement of speaking opportunity for Keeler. The “redress” sought by Keeler not only fails to repair her alleged constitutional deprivation, but it would be, as far as I am aware, unique and fundamentally contrary to the law of free speech.

.We have treated this case as if it involved no more than the First Amendment consequences of the legislature’s decisions to allow groups to obtain specialty license plates. The entire program, however, is more complex, involving the transfer of excess revenues from the program to various private groups, such as adoption agencies in the case of the pro-life plates. It might well be contended that the state has adopted a program to foster adoption by means of "selling” specialty plates to like-minded citizens. The appellees’ standing would nevertheless founder, in my view, under such an analysis just as it does in Judge Barbour’s opinion.

. See Valley Forge Christian College, 454 U.S. at 472, 102 S.Ct. at 758. See also Raines v. Byrd, 521 U.S. 811, 818-20, 117 S.Ct. 2312, 2317-18, 138 L.Ed.2d 849 (1997).

. See, e.g., FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 230-36, 110 S.Ct. 596, 607-10, 107 L.Ed.2d 603 (1990); Meese v. Keene, 481 U.S. 465, 472-77, 107 S.Ct. 1862, 1866-69, 95 L.Ed.2d 415 (1987); Valley Forge Christian College, 454 U.S. at 488-90, 102 S.Ct. at 767-68; Society of Separationists v. Herman, 959 F.2d 1283, 1285 (5th Cir.1992) (en banc); Doe v. Sch. Bd. of Ouachita Parish, 274 F.3d 289, 291-92 (5th Cir.2001).

. Although various prudential standing principles have been relaxed in some First Amendment cases, this relaxation does not eliminate the distinct and independent requirement of Article III that the dispute between the parties must amount to a case or controversy. See Sec’y of State of Md. v. Joseph H. Munson Co., Inc., 467 U.S. 947, 956-58, 104 S.Ct. 2839, 2846-47, 81 L.Ed.2d 786 (1984). See also Valley Forge Christian College, 454 U.S. at 475, 102 S.Ct. at 760 (satisfaction of requirements of prudential standing cannot substitute for Article III requirements); Lac Vieux Desert Band of Lake Superior Chippewa Indians v. Mich. Gaming Control Bd., 172 F.3d 397, 407 (6th Cir.1999). Compare City of Chicago v. Morales, 527 U.S. 41, 55 n. 22, 119 S.Ct. 1849, 1858 n. 22, 144 L.Ed.2d 67 (1999) (opinion of Stevens, J., joined by Souter, J., and Ginsburg, J.) (“When asserting a facial challenge, a party seeks to vindicate not only his own rights, but those of others who may also be adversely impacted by the statute in question. In this sense, the threshold for facial challenges is a species of third party (jus tertii) standing, which we have recognized as a prudential doctrine and not one mandated by Article III of the Constitution.”) (citing Joseph H. Munson Co., 467 U.S. at 955, 104 S.Ct. at 2846).

. In all but one of the cases cited in part II of Judge Davis’s dissent, the appellant or appellants who complained of a First Amendment violation had been convicted of violating an ordinance or statute; a favorable decision in the Supreme Court would invalidate the conviction or convictions of each appellant or group of appellants in these cases. The only exception is City of Lakewood v. Plain Dealer Pub. Co., 486 U.S. 750, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988), in which a newspaper publisher brought a facial challenge to a statute requiring the publisher to obtain a permit before placing its newsracks on public property. The statute obstructed the exercise of the publisher’s First Amendment rights; invalidating the statute for unconstitutionality would remove this obstacle. City of Lakewood would prove Judge Davis’s point if the publisher had sought to obtain an injunction preventing another newspaper from placing newsracks on private property, and if the Court had held that the newspaper had standing to seek the injunction against its rival; but these were not the facts.

. Judge Davis hypothesizes that "a declaratory judgment in Keeler’s favor might also have the effect of removing the benefit granted to those who wish to display the Choose Life plate.” This is euphemistic: such a declaratory judgment would have such an effect— immediately and without question.