RHESA HAWKINS BARKSDALE, Circuit Judge,
with whom KING, W. EUGENE DAVIS, WIENER, and DENNIS, Circuit Judges, join, dissenting:
What is not said is quite often more important than what is. The bare-bones majority opinion is a classic example. In that regard, the majority refuses to give effect to, or simply does not comprehend, the crucial litigation role played by the Federal Rules of Civil Procedure. Because the majority fails to correctly apply basic procedure — indeed, ignores it — I dissent. In so doing, I join Judge Benavides’ splendid dissent, which, consistent with my application of the Rules, employs them to find standing.
All that is needed for deciding standing is stated in part II.A of my opinion for the initial appeal (my panel opinion). Doe v. Tangipahoa Parish Sch. Bd., 473 F.3d 188, 194-96 (5th Cir.2006), vacated for reh’g en banc (2007). Each of the other two panel members filed an opinion reaching a different result on the merits; but mine, which announced the judgment, sua sponte addressed standing. Although one panel member now inexplicably joins the majority opinion, neither of those other two panel opinions mentioned, much less questioned, the standing analysis, presented infra, in my panel opinion, as noted in it. Id. at 194; see also id. 205-11 (Stewart, J., concurring in part and dissenting in part), 211-17 (Clement, J., concurring in part and dissenting in part).
The en banc majority essentially ignores my panel opinion’s implied-admission analysis. Indeed, from reading the majority opinion, it would appear standing was not even considered until after our court voted this case en banc. That, of course, is not correct. A panel opinion is vacated when en banc review is accorded, but the majority opinion should at least state what transpired on appeal and attempt to demonstrate in a far more complete fashion why the analysis employed for standing by our then undivided panel on that issue is incorrect.
The well-known general rules for standing are presented in the majority opinion and my panel opinion. There is no dispute about them. Certainly, it is quite fundamental that parties cannot concede, or waive, standing as an issue of law. Where we part ways is the majority’s insistence that parties cannot, by implication, agree upon the underlying facts necessary for deciding that issue. Nothing, especially in the light of the Federal Rules of Civil Procedure, precludes their conceding, admitting, or stipulating them.
That is the case here. As held in my panel opinion concerning an implied admission under Rule 15(b), and consistent with the Rules’ not permitting form to trump substance, the School Board admitted by implication the two simple facts, alleged in the amended complaint, necessary to satisfy standing: the Does attended School Board meetings; and they were offended by the prayers presented there. See Fed. *502 R. Civ. P. 1 (federal civil-procedure rules to govern all civil actions, save for the non-applicable exceptions provided in Rule 81, and to “be construed and administered to secure the just, speedy, and inexpensive determination of every action”). My panel opinion’s standing analysis, including the factual background, is repeated verbatim as follows. Doe, 473 F.3d at 191-96.
❖ * * * * ^
I.
In October 2003, John Doe, a resident and taxpayer of Loranger, Tangipahoa Parish, Louisiana, filed this action against the Board, including on behalf of his two minor sons. The Board is a. “[pjolitical subdivision” of the State, La. CONST, art. 6, § 44(2), and a statutorily defined “[p]ublic body”, La.Rev.Stat. Ann. § 42:4.2.
Doe challenged several prayer events permitted by the School System: pregame prayers over the public-address system at athletic events; prayers including student athletes prior to, and after completion of, such events; prayers by students to the student body over the public-address system; and the Board’s opening its meetings with a prayer (prayer practice). All but the challenge to the Board’s prayer practice were resolved by a consent judgment in August 2004. It enjoined those other prayer events, except for prayers given by students at graduation ceremonies to the extent permitted by Jones v. Clear Creek Independent School District, 977 F.2d 963, 972 (5th Cir.1992) (permitting student-initiated prayers at graduation ceremonies so long, as they do not have a coercive effect), cert. denied, 508 U.S. 967, 113 S.Ct 2950, 124 L.Ed.2d 697 (1993).
Regarding the Board’s prayer practice, the parties in September 2004 entered into the following joint stipulations, the sole evidence presented in district court. The Board is a deliberative body that acts in the public interest. It is responsible for operating and governing the School System’s 35 schools, including the high school attended by Doe’s two sons. The Board meets twice each month in the School System’s central office. The Board’s president normally presides; the vice-president presides in his absence. The meetings are open to the public, and students may attend. (Although it is possible under Louisiana law for a- student to be a Board member, La.Rev.Stat. Ann. § 17:52(E)(1), the stipulations are silent as to whether there is a student member on the Board.)
Each meeting begins with a prayer, followed by a recitation of the Pledge of Allegiance. This prayer practice has been followed since at least 1973; prayers have been offered by Board members, the Board president, the School System’s assistant superintendent, School System teachers and students, and ministers. An individual may present a prayer only after being selected by a Board member. In a sampling of prayers delivered between January 2002 and August 2004, ten were by Board members, nine by students or former students, four by principals or assistant principals, three each by teachers and the assistant superintendent, and one each by the Board president and a minister.
The stipulations contained four of the prayers given; each contained a reference to “Jesus Christ” or “God” and “Lord”. The School System’s assistant superintendent presented the following prayer on 18 February 2003:
Heavenly Father, we thank you for the many blessings we’ve received. We thank you for our health. We thank you for our strength. We thank you for our peace of mind. We thank you'for allowing us to assemble here tonight, and we *503 ask that you give this Board and our Superintendent all the wisdom and the knowledge, and the understanding they need to make the correct decisions for our students and for our parents.
Also Lord, we ask that you throw your strong arm of protection around our President and around his Cabinet Members, to help him make the right decisions that will affect thousands of U.S. soldiers, airmen, and marines, at this time. We ask that you give him the same wisdom that you gave Solomon in making decisions that’s [sic] best for our country. Also, we thank you for the greatest gift of all — your darling son, Jesus Christ. For we all know that He was born, died, and rose again, so that we all may be forgiven for our sins. And Lord, as we leave this meeting tonight, we ask that you guide us safely to our various abodes. These things we ask in your darling son, Jesus Christ’sf,] name. Amen.
A Board member’s son presented the following prayer on 23 September 2003:
Almighty God, we make. our earnest prayer that Thou wilt keep the United States in thy holy protection, that Thou wilt incline in the hearts of the citizens to cultivate a spirit of subordination and obedience to government, and entertain a brotherly affection and love for one another and for their fellow citizens of the United States at large.
And finally that Thou wilt most graciously be pleased to dispose us all to do justice, to love mercy, and to demean ourselves with- that charity, humility, and pacific temper of mind which were the characteristics of the Devine [sic] Author of our blessed religion, and without an [sic] humble imitation of whose example in these things, we can never hope to be a happy nation.
Grant our supplications, we beseech Thee, through Jesus Christ our Lord. Amen.
A School System elementary-school principal presented the following prayer on 18 May 2004:
Heavenly Father, we thank you for ■ all the blessings that you have given us. Let us not take for granted that each breath that we take is a blessing from you, and even though we don’t understand the hardships that are put before us at different times in our lives, let us always remember that the experiences that we go through have a purpose and even though we don’t understand the purpose, it is your desire that we have each and every experience on this earth, for without you we have nothing.
Watch over our soldiers that are overseas. Please keep them safe. Please soften the hearts of our adversaries and help them see that we are trying to do what we believe is good and right and to bring freedom to people that have been oppressed.
Please guide all the people in this room that are in charge of setting the education of our children and setting the future of our children. Let all of us keep in mind that we have one focus and that is what is best for our children. Let us keep them at the front of all our decision-making processes. Let us do everything to bring glory and honor to your name, and we ask all of these things through Your Son, Jesus Christ. Amen.
In the final prayer included in the stipulations, a Board member presented the following on 15 June 2004:
Father, we thank You for Your many blessings. Father, we are grateful for the- opportunity to live in this country, the greatest country on this planet. God, we have the freedom to choose, to *504 live our lives as we please. We have the opportunity to pursue any goals we so desire.
Lord, this big Board — group of people meeting here tonight has an awesome responsibility to see that each and every child in the parish has the opportunity, and the chance to prepare themselves to the fullest to live their adult lives. God, we just pray that we in this parish will have the guidance and the wisdom to make it happen. In your name we pray. Amen.
It was not stipulated that the above four prayers were representative, or typical, of those offered at Board meetings. Each prayer in the stipulations is Christian in tenor, if not in fact.
On 3 August 2004, approximately ten months after this action was filed and only approximately one month before the consent judgment and joint stipulations, the Board considered — but unanimously rejected — a written policy that would have permitted only Board members to begin “meetings with a brief non-sectarian, non-proselytizing invocation to solemnize the occasion”. Accordingly, the Board’s unwritten practice of selecting speakers who give prayers of their own unrestricted choosing remained in effect.
This action seeks injunctive and declaratory relief. The district court held the prayers: fall outside the legislative-prayer context permitted by Marsh v. Chambers, 463 U.S. 783, 103 S.Ct. 3330, 77 L.Ed.2d 1019 (1983); and otherwise violate the Establishment Clause pursuant to the traditional analysis under Lemon v. Kurtzman, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). The court permanently enjoined the Board from opening its meetings with any prayer: “the [Board’s] practice of opening each ... meeting with a religious invocation violates [Doe’s] rights under the Establishment Clause of the First Amendment”. Doe v. Tangipahoa Parish Sch. Bd., No. 03-2870, 2005 WL 517341, slip op. at 25 (E.D.La. 24 Feb. 2005).
II.
Neither in district court, nor on appeal, has the Board challenged Doe’s standing to bring this action. Nor did the district court address it. Because standing is jurisdictional, however, we must address it sua sponte before considering this Establishment Clause issue of first impression in our circuit. Doe v. Sch. Bd. of Ouachita Parish, 274 F.3d 289, 292 (5th Cir.2001); see Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 547, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986) (“This question the court is bound to ask and answer for itself, even when not otherwise suggested, and without respect to the relation of the parties to it.”) (quoting Mansfield, C. & L.M. Ry. Co. v. Swan, 111 U.S. 379, 382, 4 S.Ct. 510, 28 L.Ed. 462 (1884)).
A.
Neither of the separate opinions contests the following standing analysis. This inquiry has two components. First addressed are constitutional limitations, derived from the Constitution’s case-and-controversy requirement in Article III; second, judicially-created prudential limitations are examined. McClure v. Ashcroft, 335 F.3d 404, 408 (5th Cir.2003).
To establish Article III standing, Doe “must show that the conduct of which he complains has caused him to suffer an ‘injury in fact’ that a favorable judgment will redress”. Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 12, 124 S.Ct. 2301, 159 L.Ed.2d 98 (2004) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). “[T]he concept of injury for standing purposes is particularly elusive in *505 Establishment Clause cases”. Littlefield v. Forney Indep. Sch. Dist., 268 F.3d 275, 294 n. 31 (5th Cir.2001) (alteration in original) (quoting Murray v. City of Austin, 947 F.2d 147, 151 (5th Cir.1991), cert. denied, 505 U.S. 1219, 112 S.Ct. 3028, 120 L.Ed.2d 899 (1992)). Our “rules of standing recognize that noneconomic or intangible injury may suffice to make an Establishment Clause claim justiciable”. Id. (quoting Suhre v. Haywood County, 131 F.3d 1083, 1086 (4th Cir.1997)). For example, direct exposure to a mandatory school-uniform policy satisfied the “intangible injury” requirement for Establishment Clause standing. Id. Parents and students challenged this policy, claiming, inter alia, its opt-out procedures “favor[ed] certain established religions at the expense of other religions and thus violate[d] the Establishment Clause”. Id. at 282.
In the context of the Establishment Clause, “we attach considerable weight to ... standing ... not [having] been an issue in the Supreme Court in similar cases”. Murray, 947 F.2d at 151. For example, standing existed for a claimed Establishment Clause violation that had impaired “use or enjoyment of a public facility”. Sch. Bd. of Ouachita Parish, 274 F.3d at 292.
Standing is bolstered when, as here, the plaintiffs are public school students and their parents, “who enjoy a cluster of rights vis-a-vis their schools” and thus transcend the realm of mere bystanders. Id. A parent may be permitted to bring an action as the next friend of his or her children; however, for an action for themselves as well, parents must “assert an injurious deprivation of their own legal rights or interests”. Ward v. Santa Fe Indep. Sch. Dist., 393 F.3d 599, 606 (5th Cir.2004).
Doe appears to assert two standing bases: (1) as a parent of two students in the School System, he (as well as his two sons) has attended, and been offended by, Board meetings; and (2) as a resident and taxpayer of Tangipahoa Parish, where the school district is located. (Because we hold Doe has standing under the first basis, we need not address taxpayer standing.)
In his original Í4 October 2003 complaint, Doe stated: he was “a domiciliary and resident” and “a taxpayer and registered voter” of Tangipahoa Parish, and also the father of two school-system students; and he and his sons found “objectionable the non-secular manner in which the Board’s meetings are conducted.... By commencing the meetings with a prayer, the Board is conveying its endorsement of religion”. He noted explicit references to God and Jesus Christ at Board meetings. In seeking injunctive relief, Doe explained his family “ha[d] suffered, and will continue to suffer, immediate and irreparable harm in the event that [the Board is] allowed to continue permitting, authorizing, encouraging, and acquiescing in the delivery of ... religious' invocations at the start of each board meeting”.
As permitted by Federal Rule of Civil Procedure 15(a), Doe’s 26 November 2003 amended complaint was filed before the Board answered. The amendment added: “Plaintiffs, John Doe, James Doe, and Jack Doe, have been in attendance at school board meetings which were opened with a prayer”.
In its 26 January 2004 answer, the Board admitted its meetings were open to the public; it denied, but only for a lack of information, Doe’s allegations regarding attendance and involvement. No mention was made whether Doe had standing to bring this action. ,
*506 Instead, the parties on 30 August 2004 entered into the earlier-discussed consent judgment, which resolved all claims in Doe’s complaint except his challenge to the Board’s prayer practice. Four days later, on 3 September 2004, the parties entered into the stipulations discussed supra. These stipulations did not address the standing issue directly, noting only that Doe was “a person of full age of majority and a resident and domiciliary of ... [Tan-gipahoa] Parish ... wherein he is a registered voter and taxpayer” and parent of two students within the School System. The remainder of the stipulations do not address Doe personally.
The Board’s failure to challenge Doe’s assertions that he attended Board meetings and was offended by their content was never challenged, beyond the lack-of-information denial in its answer, filed more than eight months before the consent judgment. As this action progressed, the Board had many opportunities — including during the bench trial — to contest Doe’s standing; the Board’s failure to challenge either Doe’s attendance at Board meetings or his assertion that he was offended is the equivalent of an implied admission.
Although we have not located any precedent for this implied-admission concept regarding standing, we find it sufficiently analogous to the approach taken by Federal Rule of Civil Procedure 15(b). That rule states, in part: “When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings”. Similarly, the Board’s decision to proceed on the merits of Doe’s claim, without challenging either that he attended Board meetings or was offended by them, permits an inference that the Board conceded these allegations in Doe’s complaint. Further, the Board’s entering into the consent judgment and stipulations with Doe permits the inference that, had the Board disagreed with Doe’s allegations that he attended Board meetings and was offended by its prayer practice, it would not have entered into the consent judgment and stipulations. We may make such inferences from the record. Cf. Ladue v. Chevron, U.S.A., Inc., 920 F.2d 272, 277 (5th Cir.1991) (inferring from the record the cause of injury in a products liability action). Nor do we have any reason to believe the interests of Doe, in his role as next friend, conflict with those of his sons. In contrast, such a conflict arose in New-dow with evidence that the interests of a non-custodial father conflicted with those of his child. 542 U.S. at 15, 124 S.Ct. 2301.
Based on the unchallenged allegations in the complaint, Doe has shown an injury; he and his sons have attended Board meetings and have been offended by the Board’s prayer practice, which they “find wholly objectionable”. This suffices for a noneconomic, intangible injury under our Establishment Clause jurisprudence. Littlefield, 268 F.3d at 294 n. 31.
Doe’s injury, caused by that practice, would be redressed by an injunction against it. Nothing has been offered to suggest that the Board did not comply with the one imposed by the district court, so Doe’s injury appears sufficiently redressed by it.
Accordingly, three prudential factors are considered: (1) whether Doe’s complaint fits “within the zone of interests protected by the ... constitutional provision at issue”; (2) “whether [his] complaint raises [more than] abstract questions amounting to generalized grievances which are more appropriately resolved by the legislative branches”; and (3) “whether [Doe] is asserting his ... own legal rights and interests”, as opposed to those of third parties. Murray, 947 F.2d at 151 (quoting Cramer *507 v. Skinner, 931 F.2d 1020, 1024 (5th Cir.1991)). None of the prudential limitations bars Doe’s standing: his assertion that the prayer practice of the Board, a political subdivision of the state, impermissibly “injects] religion” into Board meetings, fits within the zone of Establishment Clause claims; he raises not abstract, generalized grievances, but his own experiences at Board meetings; and, finally, he asserts both his own injury, as well as those of his sons as next friend. Id. (This ends the applicable portion of my panel opinion.)
;{: :¡; ;{i sji # sis
The foregoing panel-opinion analysis remains sufficient for our en bane court to hold standing present. In this regard, similar to the School Board’s not questioning standing either in district court, or on appeal, it did not challenge it here until shortly before en banc oral argument, when our court required supplemental letter briefs on standing. In other words, even though my panel opinion addressed standing sua sponte, the School Board did not question it in either its en banc petition or initial en banc briefs (in addition to its opening en banc brief, it was permitted to file a reply brief).
Again, parties cannot concede, or waive, standing as a question of law; but, certainly, we should accord considerable weight to the School Board’s initial acceptance of my panel opinion’s implied-admission analysis. Its silence until its ordered supplemental en banc brief on standing has, in effect, elevated its implied admission in district court for the facts necessary for standing to a judicial admission in our en banc court.
Restated, until our en-'banc court suggested otherwise, by requiring supplemental briefing, the School Board accepted my implied-admission analysis. The factual posture for standing did not change after the initial appeal, unlike the situation for our recent en-'banc mootness decision in Staley v. Harris County, 485 F.3d 305 (5th Cir.2007) (en banc). Instead, apparently deciding that “half a loaf [possible dismissal on standing] is better than none [possibly losing on the merits]”, the School Board suddenly decided standing is lacking, even though the underlying facts have not changed.
My implied-admission analysis does not, as the majority claims, “intimate[] that lower courts can infer standing from the Supreme Court’s decision in similar Establishment Clause cases where the issue was not ruled on by the Court”. Maj. Opn. at 498. Rather, my analysis simply concludes that courts should hold standing exists when the parties repeatedly admit by implication the facts necessary to satisfy standing. Along that line, in taking me to task for supposedly “cit[ing] no authority [in my panel opinion] to support [my] implied-admission theory of standing”, id. at 498, suggesting I attempted to sneak this analysis under the door, the majority goes far astray in two ways. First, my panel opinion .does cite “authority” — by analogizing to Rule 15(b). 473 F.3d at 195. Second, my panel opinion candidly admits no “precedent [had been located] for this implied-admission concept”. Id. (emphasis added). Surely, the majority recognizes courts must sometimes decide issues of first impression.
Concomitantly,- standing must, of course, be viewed in context. E.g., Littlefield, 268 F.3d at 294 n. 31. Moreover, as reflected in my panel opinion, 473 F.3d at 194, standing is more relaxed for Establishment Clause claims, especially concerning schools. E.g., Lee v. Weisman, 505 U.S. 577, 583, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992) (holding plaintiff had standing to challenge future clergy-presence and prayers at a high-school graduation based on *508 stipulated facts and assumptions concerning the offering and content of the prayers from an earlier middle-school graduation). For the majority to state that, in Lee, “the Court did not reach the issue” of this relaxed standard is simply blinking at reality. Maj. Opn. at 498 n. 7.
Regarding the Court’s relaxed-standing standard, JUDGE DeMOSS’ special concurrence arguably creates a majority on this point for our en banc court by agreeing standing is relaxed for Establishment Clause cases. MY BROTHER protests that the Supreme Court “speak[s] out of both sides of its mouth” on its “standing jurisprudence in [such] cases”. Spec. Con. at 500. He posits that, while the Court has applied strict standing requirements in some Establishment Clause cases, in others, it “has implicitly, and wrongly in [his] view, assumed standing in [such] cases where plaintiffs have not alleged or proved an injury that would suffice to confer standing in any other type of case”. Id. “Oh that mine enemy would write a book!” (This epigram, often used long ago by at least two outstanding lawyers (one now retired; the other, deceased) in my former law firm, is based on Job’s lament: “Oh that my words were written! Oh that they were inscribed in a book!” The Book: of Job, 19:23.)
I disagree, of course, with JUDGE De-MOSS’ assertion that the Court has been inconsistent. A fair reading of its opinions leaves no doubt standing is consistently more relaxed for such cases, as discussed above and in my panel opinion. In any event, by acknowledging the Court’s employing this relaxed standard (but, in his view, only in some instances), JUDGE De-MOSS arguably agrees with my recognizing this somewhat different standard for Establishment Clause cases. Therefore, for this point on the standing standard, he arguably crosses the aisle from the slim eight-seven majority on standing vel non to join the seven in dissent. As stated, his position arguably constitutes the eighth vote needed for an en banc majority recognizing this relaxed-standard rule. He’s most welcome aboard. (As he makes quite clear, he concludes, however, that standing is lacking for this case.)
For the context of this case, in which all but one of the claims were settled shortly before trial and the parties entered into the above-described stipulations, the School Board, by implication, admitted the Does’ allegations regarding attending the Board’s meetings and being offended by the prayers.[1] In short, the well-known constitutional and prudential reasons for requiring standing are more than satisfied here. Surely, had the School Board felt the Does lacked standing, it would not have stipulated as it did, including for the four prayers that had been presented at *509 School Board meetings. Those stipulations followed on the heels of a consent judgment concerning other challenged prayer events.
Simply put, the School Board more than recognized its requisite adversarial position with the Does. This is consistent with the Does’ m banc position for standing. Contrary to the majority’s interpretation of the Does’ position, they did not “admit[ ] both in briefing and in oral argument to the en banc court that the necessary proof is absent from the record”. Maj. Opn. at 499 (emphasis added). While admitting such evidence could certainly (and quite easily) have been more complete, the Does correctly maintained: for deciding standing vel non, this action must be examined globally; and the record evidence is sufficient to provide a basis for holding standing present.
In opposition to this plain truth, the majority relies heavily on a Third Circuit opinion, ACLU-NJ v. Township of Wall, 246 F.3d 258 (3d Cir.2001). Maj. Opn. at 497-98. (In doing so, the majority even notes three times the opinion was written by now-Justice Alito. Id. at 497-99. “None dare call it [pandering].” See SiR John HariNgton, EpigRAms, bk. 4, no. 5 (1618) (“Treason doth never prosper, what’s the reason? For if it prosper, none dare call it treason.”).) ACLU-NJ is so distinguishable that one can only wonder why the majority would cite it, much less rely so heavily on it. For starters, unlike here, defendants early on, and consistently, contested standing. 246 F.3d at 261-62. Moreover, unlike the implied-admission basis I employ under Rule 15(b), or the complementary basis employed by Judge Benavides under Rule 16 (the pretrial order), ACLU-NJ involved evidence having been presented concerning a holiday display in one year but relief having been requested instead for a quite different display in the next. Id. at 266.
It is fundamental that courts have an independent duty to ensure standing. My panel opinion did so sua sponte. Concomitantly, courts have a duty to recognize standing when it exists, as in this instance, and reach the merits. Along that line, dismissing for lack of standing obviously has far more serious effects than, as the majority sugar-coats it, being “an inconvenience for the parties”. Maj. Opn. at 499. The majority ignores reality — what transpired in district court and here — in holding standing lacking.
To find standing is not engaging in “speculation”, as decried by the majority. Id. at 499. Far from it. Instead, for the reasons stated in Judge Benavides’ and my dissents, it is simply giving proper effect to the Federal Rules of Civil Procedure. They do not treat differently from other situations the procedure to be utilized for considering parties’ acts or omissions regarding the evidence necessary for satisfying standing. Restated, the Rules contain no heightened exception for such evidence. Because the majority commits a most grievous and unpardonable judicial sin of exalting form over substance, I dissent. For many reasons, some more obvious than others, this is a sad day for our court.

. In unnecessarily calling the stipulations "woefully inadequate”, the majority incorrectly characterizes an oral-argument answer by Doe’s counsel, concerning stipulation 18, which stated only what the School Board's testimony would have been on a point. The stipulation did not state the Does agreed with the position that would have been asserted in that "testimony”. The majority states that counsel "disagreed that this was a statement of fact”. What counsel correctly pointed out was that the stipulation was only what the Board’s testimony would have been. That is a "fact”. But, contrary to the majority’s characterization, counsel did not state that stipulations “are assertions that could be contradicted in the event of cross-examination”. Instead, he stated correctly: the stipulation presented only the testimony the Board would have given; and the stipulation did not state the Does agreed with that testimony (position). The "cross-examination” comment apparently was simply an analogy to the procedure that would have been followed, had live testimony been given, instead of a stipulation presenting only one side’s position on an issue.