United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 25, 2007**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 05-30294
_____

JOHN DOE, Individually and as next friend of his minor children,
James Doe and Jack Doe,

Plaintiff-Appellee,

versus

TANGIPAHOA PARISH SCHOOL BOARD; JIMMIE RICHARDSON, Reverend,
School Board Member, District A; ROBERT POTTS, School Board
Member, District B; LEONARD GENCO, School Board Member,
District C; AL LINK, School Board Member, District D;
DON WILLIAMS, School Board Member, District E; ROBERT CAVES,
School Board Member, District F; MAXINE DIXON, School Board
Member, District G; SANDRA BAILEY-SIMMONS, School Board Member,
District H; CARL BARDWELL, School Board Member, District I; LOUIS
JOSEPH, Superintendent, TANGIPAHOA PARISH SCHOOL SYSTEM,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana

_____

Before JONES, Chief Judge, KING, JOLLY, DAVIS, SMITH, WIENER,
BARKSDALE, GARZA, DeMOSS, BENAVIDES, STEWART, DENNIS, CLEMENT,
PRADO, and OWEN, Circuit Judges.

EDITH H. JONES, Chief Judge, joined by JOLLY, SMITH, GARZA, DeMOSS,
CLEMENT, PRADO and OWEN, Circuit Judges:

After the court voted to rehear this case en banc, a

review of the record prompted further inquiry, which we are bound

to make,[1] concerning the Does' standing to sue.  The Supreme Court has admonished that,

> This obligation to notice defects in a court of appeals' subject-matter jurisdiction assumes a special importance when a constitutional question is presented.  In such cases we have strictly adhered to the standing requirements to ensure that our deliberations will have the benefit of adversary presentation and a full development of the relevant facts.

Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541-42, 106 S. Ct. 1326, 1331 (1986) (footnote omitted).  Constitutional standing requires that the plaintiff personally suffered some actual or threatened injury that can fairly be traced to the challenged action and is redressable by the courts.[2]  Standing to

---

[1]     Standing is a jurisdictional requirement and not subject to waiver. Lewis v. Casey, 518 U.S. 343, 349 n.1, 116 S. Ct. 2174, 2178 n.1 (1996).  A federal court must consider its jurisdiction sua sponte.  Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 93, 118 S. Ct. 1003, 1011 (1998).

[2]     As the Supreme Court stated in Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 472, 102 S. Ct. 752, 758-59 (1982), and reiterated in Bender, 475 U.S. at 542-43, 106 S. Ct. at 1332:

> At an irreducible minimum, Art. III requires the party who invokes the court's authority to show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant, and that the injury fairly can be traced to the challenged action and is likely to be redressed by a favorable decision....
>
> The requirement of actual injury redressable by the court, serves several of the implicit policies embodied in Article III. It tends to assure that the legal questions presented to the court will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action. The 'standing' requirement serves other purposes. Because it assures an actual factual setting in which the litigant asserts a claim of injury in fact, a court may decide the case with some confidence that its decision will not pave the way for lawsuits which have some, but not all, of the facts of the case actually decided by the court.

(internal quotation marks and citations omitted); see also Elk Grove Unified Sch.

sue must be proven, not merely asserted, in order to provide a concrete case or controversy and to confine the courts' rulings within our proper judicial sphere.

Standing to challenge invocations as violating the Establishment Clause has not previously been based solely on injury arising from mere abstract knowledge that invocations were said.[3] The question is whether there is proof in the record that Doe or his sons were exposed to, and may thus claim to have been injured by, invocations given at any Tangipahoa Parish School Board meeting. As the dissenters agree, there is no basis for taxpayer standing. More to the point, there is no evidence of such exposure in the record of this case, which was "fully" tried on stipulations.[4] Plaintiffs' counsel acknowledged both in

_____

Dist. v. Newdow, 542 U.S. 1, 11-12, 124 S. Ct. 2301, 2308-09 (2004); Lujan v. Defenders of Wildlife, 504 U.S. 555, 559-562, 112 S. Ct. 2130, 2136-37 (1992).

[3]  Cf. Hinrichs v. Bosma, 440 F.3d 393, 396-98 (7th Cir. 2006)(plaintiff had taxpayer standing); Simpson v. Chesterfield County Bd. of Supervisors, 404 F.3d 276, 279-80 (4th Cir. 2005) (plaintiff not permitted by county to offer invocation); Wynne v. Great Falls, 376 F.3d 292, 294 (4th Cir. 2004)(plaintiff "regularly attended" council meetings where offending prayers occurred); Bacus v. Palo Verde Unified Sch. Dist., 52 F.App'x 355, 356 (9th Cir. 2002)(unpublished)(teachers "regularly attend the school board meetings where the invocations...are recited"); Coles v. Cleveland Bd. of Educ., 171 F.3d 369, 374 (6th Cir. 1999)(student and teacher attended specific board meeting where offending prayers were offered); Snyder v. Murray City Corp., 159 F.3d 1227, 1229-30 (10th Cir. 1998)(plaintiff not permitted to offer invocation); Murray v. City of Austin, 947 F.2d 147, 151 (5th Cir. 1991)(plaintiff submitted affidavit that he was exposed to the cross on city's insignia).

[4]  This case was placed before the district court without testimony and on the basis of stipulations that are woefully inadequate to afford the precise factual context on which sensitive church-state decisions must be based. See Staley v. Harris County, 485 F.3d 305, 309 (5th Cir. 2007)(en banc). An example is Stipulation No. 18, which states:

In order to avoid the necessity of calling "live" witnesses to testify at trial, the parties have agreed to stipulate to the

3

supplemental letter briefing and oral argument to the en banc court that the proof deficiency was unintentional, and he urges us to infer that the Does attended school board meetings where an invocation occurred. Unfortunately, the minimal record in this case affords no basis for drawing that inference, if it were permitted, which it is not.[5]

Only three points need be made in response to the dissents. First, just as there is no evidentiary proof that any of the Does ever attended a school board session at which a prayer like those challenged here was recited, so, too, Judge Barksdale cites no authority to support his implied-admission theory of standing. It is contrary to the Supreme Court cases cited above. See supra notes 2 and 3. Interestingly, it also conflicts with an opinion by now-Justice Alito, which held, after a real trial on the

---

following testimony as though such testimony was elicited from the witness stand: the individual defendants called as witnesses at the trial would testify under oath that the Tangipahoa School Board does not discriminate on the basis of religious viewpoint and that any individual who wants to give the invocation prior to a board meeting can do so regardless of their religious beliefs.

At oral argument, Plaintiffs' counsel disagreed that this was a statement of fact and said that the "stipulations" are assertions that could be contradicted in the event of cross-examination.

[5] See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., --- U.S. ---, 127 S. Ct. 1184, 1191 (2007)("'Without jurisdiction the court cannot proceed at all in any cause'; it may not assume jurisdiction for the purpose of deciding the merits of the case." (quoting Steel Co., 523 U.S. at 94, 118 S. Ct. at 1012)); Spencer v. Kemna, 523 U.S. 1, 10-11, 118 S. Ct. 978, 984-85 (1998)(noting the "'long-settled principle that standing cannot be inferred argumentatively from averments in the pleadings, but rather must affirmatively appear in the record,' and that 'it is the burden of the party who seeks the exercise of jurisdiction in his favor, clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute.'" (quoting FW/PBS, Inc. v. Dallas, 493 U.S. 215, 231, 110 S. Ct. 596, 608 (1990)(citations omitted))).

4

merits, that plaintiffs had presented insufficient proof of their exposure to and personal offense from an allegedly unconstitutional civic Christmas display to support standing.[6]  ACLU-NJ v. Township of Wall, 246 F.3d 258, 266 (3d Cir. 2001).  The opinion notes,

> While we assume that the Millers disagreed with the 1999 display for some reason, we cannot assume that the Millers suffered the type of injury that would confer standing.  As noted, "the party invoking federal jurisdiction bears the burden of establishing [standing] . . . in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at successive stages of the litigation."  Lujan, 504 U.S. at 561, 112 S. Ct. 2130.  Mere assumption would not satisfy the plaintiffs' burden to prove an element of their cause of action at this stage of the litigation and it cannot satisfy their burden to prove standing.

Id.

Second, Judge Barksdale's dissent intimates that lower courts can infer standing from the Supreme Court's decision in similar Establishment Clause cases where the issue was not ruled on by the Court.[7]  This proposition is incorrect.  Going back to Chief

---

[6]    The Alito opinion also alludes to the difficulty of inferring, without proof, facts necessary to establish standing:

> While Mr. Miller testified that he went to the municipal complex and observed the Township's 1999 display, it is unclear whether he did so in order to describe the display for this litigation or whether, for example, he observed the display in the course of satisfying a civic obligation at the municipal building . . . . Moreover, neither Mr. Miller nor Mrs. Miller provided testimony regarding their reaction to the 1999 display, which was significantly different from the display in 1998.

Id.

[7]    See Barksdale dissent, citing Murray, 947 F.2d at 151; and later asserting that "standing is more relaxed for Establishment Clause claims. . . .", citing Lee v. Weisman, 505 U.S. 577, 583, 112 S. Ct. 2649, 2653 (1992)(where the Court did not reach the issue).

Justice Marshall, the Court has consistently held that it "is not bound by a prior exercise of jurisdiction in a case where [jurisdiction] was not questioned and it was passed sub silentio." United States v. LA Trucker Truck Lines, 344 U.S. 33, 38, 73 S. Ct. 69 (1952)(Jackson, J.)(citations omitted); see also Steel Co., 523 U.S. at 91, 118 S. Ct. at 1011, Lewis, 518 U.S. at 351, 116 S. Ct. at 2180; Fed. Election Comm'n v. NRA Political Victory Fund, 513 U.S. 88, 97, 115 S. Ct. 537, 542-43 (1994).

Finally, Judge Benavides relies on the pretrial order for the proposition that no "facts" relevant to the Does' standing were in dispute. Justice Alito's careful opinion again shows the way. This court can certainly "assume" that the Does may have been offended by an invocation at a school board meeting, if they attended one. Unfortunately, there is no correlation between their attendance and the prayers to which the parties have stipulated. It is not this court's fault that the connection between their attendance and allegedly unconstitutional activity is not made in the record.[8] Moreover, Judge Benavides overlooks that Paragraph 8 of the "contested issues of fact" in the pretrial order states that "All issues of fact implicit in the contested issues of law" remain contested.

Without the requisite specifics, this court would be speculating upon the facts. This is something we cannot do,

---

[8] The amended complaint to which Judge Benavides points is not verified, and therefore cannot constitute record proof.

6

particularly in the standing context, where the facts must be proven, not merely asserted or inferred. See Lujan, 504 U.S. at 561, 112 S. Ct. at 2136. Notwithstanding the dissents, plaintiffs' counsel admitted both in briefing and in oral argument to the en banc court that the necessary proof is absent from the record. No amount of creative inferences from the pretrial order or "stipulations" can overcome this defect. As standing is not subject to waiver by the parties, see supra note 1, the Board's pretrial, and even post-trial, failures to contest standing cannot, ipso facto, create jurisdiction in federal court.

To find lack of standing at this late stage no doubt poses an inconvenience for the parties. On the other hand, it spares this court from issuing a largely hypothetically-based ruling on issues of broad importance to deliberative public bodies in this circuit and beyond.[9] Finally, given the ideological nature of the case, it is not hard to conceive that a more concrete controversy may arise in the future.

The judgment of the district court is **VACATED**, and the case **REMANDED WITH INSTRUCTIONS TO DISMISS.**

---

[9] Subject to footnote 4, supra, the parties' Stipulation No. 7 stated: "In Louisiana, school boards are deliberative bodies constituted to act in the public interest."

7

DeMOSS, Circuit Judge, specially concurring:

Under Article III of the Constitution federal courts have the power to resolve only "cases" and "controversies." This constitutional limitation has manifested itself in the requirement that a plaintiff have standing, which requires a showing of (1) an injury in fact, (2) causation, and (3) redressibility. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).[1] The importance of standing is underscored by the fact it "tends to assure that the legal questions presented to the court will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action." *Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc*., 454 U.S. 464, 472 (1982). The Supreme Court has recently recognized in *Hein v. Freedom from Religion Foundation* that another important purpose of the standing requirement is to ensure separation of powers. *See* --- S.Ct. ---, No. 06-157, 2007 WL 1803960, at *16 (2007).

Furthermore, the Supreme Court has repeatedly stated that the standing elements "are not mere pleading requirements but rather an indispensable part of the plaintiff's case, [and] each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof . . . ." *See, e.g., Lujan*, 504

---

[1] *Lujan* defines injury in fact as "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." 504 U.S. at 560 (internal quotation marks and citations omitted); *accord* BLACK'S LAW DICTIONARY 801 (8th ed. 2004).

8

U.S. at 561. Because of these indispensable and well-established requirements, I concur wholeheartedly in the majority's refusal to infer standing from a record completely lacking evidence on the subject. As the majority mentions, we have no evidence that the Does actually attended any meeting of the Tangipahoa Parish School Board, much less the meetings at which the invocations quoted in the stipulations were given.

Likewise, the stipulations say nothing about the injury in fact allegedly suffered by the Does. Unless the Does were actually exposed to an invocation, they could not possibly have suffered the kind of individualized injury necessary to confer standing. *See Hein*, 2007 WL 1803960 at *11. In *Hein*, the Court emphasized that "a generally available grievance about government . . . seeking relief that no more directly and tangibly benefits [the plaintiff] than it does the public at large" does not constitute an injury in fact. *Id.* (internal quotation marks omitted). Instead, the plaintiff must present evidence of an individualized and direct injury and seek relief that will likewise benefit him directly in order to satisfy the standing requirement. *See id.* at n.2.[2] The Does simply have not presented any such evidence. As a result of their failure, this case is like *Hein* in that the Does have established only a general

---

[2] In *Hein,* the individual Respondents asserted standing only on the basis that they were taxpayers. While *Hein* dealt with issues involving taxpayer standing, the rule that a plaintiff's injury must affect him individually and the remedy he seeks must benefit him directly, should be generally applicable in Establishment Clause cases.

grievance indistinguishable from the one that any other non-attendee citizen could have.

In addition, I feel compelled to comment on the current state of the Supreme Court's standing jurisprudence in Establishment Clause cases. On the one hand, the Court has stated that the standing requirements in Establishment Clause cases are *as rigorous as in other types of cases*. *See Valley Forge*, 454 U.S. at 484, 489 ("[W]e know of no principled basis on which to create a hierarchy of constitutional values or a complementary 'sliding scale' of standing."). On the other hand, the Court has implicitly, and wrongly in my view, assumed standing in Establishment Clause cases where plaintiffs have not alleged or proved an injury that would suffice to confer standing in any other type of case.[3]

The Supreme Court cannot continue to speak out of both sides of its mouth if it intends to provide real guidance to federal courts on this issue. That is, it cannot continue to hold expressly that the injury in fact requirement is no different for Establishment Clause cases, while it implicitly assumes standing in cases where the alleged injury, in a non-Establishment Clause case, would not get the plaintiff into the courthouse. This double standard must be corrected because, contrary to the standing rules

---

[3]     In order to prevent confusion, let me make clear that I do not intend to jump ship from the majority's position, as Judge Barksdale suggests in his dissent. I fully agree with the majority that this record does not contain the evidence required to establish standing.

cited above, it opens the courts' doors to a group of plaintiffs who have no complaint other than they dislike any government reference to God.

Regardless, I recognize that these parties may be before this Court again and I caution them that more evidence of the alleged injury in fact is essential for us to reach the merits of their dispute. To me, the critical issue is whether each of the Does has proved that he individually sustained an injury in fact as a result of the school board's practice of permitting citizens of the school district to freely exercise their own rights of religion and free speech under the First Amendment by offering a prayer or invocation at the beginning of school board meetings. On the basis of the stipulations before us in this case, I would find these facts helpful in evaluating injury in fact: this prayer practice has existed for more than thirty years, the school board does not specify or approve the contents of any prayer or invocation in advance, and in giving the prayer or invocation, the speaker does not purport to speak for, or on behalf of, the school board. In my view, the fact that the Does "take offense" to this prayer practice should not constitute an injury in fact for standing purposes.

11

RHESA HAWKINS BARKSDALE, Circuit Judge, with whom KING, DAVIS, WIENER, and DENNIS, Circuit Judges, join, dissenting:

What is not said is quite often more important than what is. The bare-bones majority opinion is a classic example. In that regard, the majority refuses to give effect to, or simply does not comprehend, the crucial litigation role played by the Federal Rules of Civil Procedure. Because the majority fails to correctly apply basic procedure – indeed, ignores it – I dissent. In so doing, I join Judge Benavides' splendid dissent, which, consistent with my application of the Rules, employs them to find standing.

All that is needed for deciding standing is stated in part II.A of my opinion for the initial appeal (my panel opinion). ***Doe v. Tangipahoa Parish Sch. Bd.***, 473 F.3d 188, 194-196 (5th Cir. 2006), *vacated for reh'g en banc* (2007). Each of the other two panel members filed an opinion reaching a different result on the merits; but mine, which announced the judgment, *sua sponte* addressed standing. Although one panel member now inexplicably joins the majority opinion, neither of those other two panel opinions mentioned, much less questioned, the standing analysis, presented *infra*, in my panel opinion, as noted in it. ***Id.*** at 194; *see also **id.*** 205-11 (Stewart, J., concurring in part and dissenting in part), 211-17 (Clement, J., concurring in part and dissenting in part).

The *en banc* majority essentially ignores my panel opinion's implied-admission analysis. Indeed, from reading the majority opinion, it would appear standing was not even considered until after our court voted this case *en banc*. That, of course, is not correct. A panel opinion is vacated when *en banc* review is accorded, but the majority opinion should at least state what transpired on appeal and attempt to demonstrate in a far more complete fashion why the analysis employed for standing by our then undivided panel on that issue is incorrect.

The well-known general rules for standing are presented in the majority opinion and my panel opinion. There is no dispute about them. Certainly, it is quite fundamental that parties cannot concede, or waive, standing as an issue of law. Where we part ways is the majority's insistence that parties cannot, by implication, agree upon the underlying facts necessary for deciding that issue. Nothing, especially in the light of the Federal Rules of Civil Procedure, precludes their conceding, admitting, or stipulating them.

That is the case here. As held in my panel opinion concerning an implied admission under Rule 15(b), and consistent with the Rules' not permitting form to trump substance, the School Board admitted by implication the two simple facts, *alleged in the amended complaint*, necessary to satisfy standing: the Does attended School Board meetings; and they were offended by the

13

prayers presented there. *See* FED. R. CIV. P. 1 (federal civil-procedure rules to govern all civil actions, save for the non-applicable exceptions provided in Rule 81, and to "be construed and administered to secure the just, speedy, and inexpensive determination of every action"). My panel opinion's standing analysis, including the factual background, is repeated verbatim as follows. *Doe*, 473 F.3d at 191-196.

\*\*\*\*\*\*

I.

In October 2003, John Doe, a resident and taxpayer of Loranger, Tangipahoa Parish, Louisiana, filed this action against the Board, including on behalf of his two minor sons. The Board is a "[p]olitical subdivision" of the State, LA. CONST. art. 6, § 44(2), and a statutorily defined "[p]ublic body", LA. REV. STAT. ANN. § 42:4.2.

Doe challenged several prayer events permitted by the School System: pre-game prayers over the public-address system at athletic events; prayers including student athletes prior to, and after completion of, such events; prayers by students to the student body over the public-address system; and the Board's opening its meetings with a prayer (prayer practice). All but the challenge to the Board's prayer practice were resolved by a consent judgment in August 2004. It enjoined those other prayer events, except for prayers given by students at graduation ceremonies to the extent permitted by *Jones v. Clear Creek Independent School*

14

*District*, 977 F.2d 963, 972 (5th Cir. 1992) (permitting student-initiated prayers at graduation ceremonies so long as they do not have a coercive effect), *cert. denied*, 508 U.S. 967 (1993).

Regarding the Board's prayer practice, the parties in September 2004 entered into the following joint stipulations, the sole evidence presented in district court. The Board is a deliberative body that acts in the public interest. It is responsible for operating and governing the School System's 35 schools, including the high school attended by Doe's two sons. The Board meets twice each month in the School System's central office. The Board's president normally presides; the vice-president presides in his absence. The meetings are open to the public, and students may attend. (Although it is possible under Louisiana law for a student to be a Board member, LA. REV. STAT. ANN. § 17:52(E)(1), the stipulations are silent as to whether there is a student member on the Board.)

Each meeting begins with a prayer, followed by a recitation of the Pledge of Allegiance. This prayer practice has been followed since at least 1973; prayers have been offered by Board members, the Board president, the School System's assistant superintendent, School System teachers and students, and ministers. An individual may present a prayer only after being selected by a Board member. In a sampling of prayers delivered between January 2002 and August 2004, ten were by Board members, nine by students or former

15

students, four by principals or assistant principals, three each by teachers and the assistant superintendent, and one each by the Board president and a minister.

The stipulations contained four of the prayers given; each contained a reference to "Jesus Christ" or "God" and "Lord". The School System's assistant superintendent presented the following prayer on 18 February 2003:

> Heavenly Father, we thank you for the many blessings we've received. We thank you for our health. We thank you for our strength. We thank you for our peace of mind. We thank you for allowing us to assemble here tonight, and we ask that you give this Board and our Superintendent all the wisdom and the knowledge, and the understanding they need to make the correct decisions for our students and for our parents.
> Also Lord, we ask that you throw your strong arm of protection around our President and around his Cabinet Members, to help him make the right decisions that will affect thousands of U.S. soldiers, airmen, and marines, at this time. We ask that you give him the same wisdom that you gave Solomon in making decisions that's [sic] best for our country. Also, we thank you for the greatest gift of all — your darling son, Jesus Christ. For we all know that He was born, died, and rose again, so that we all may be forgiven for our sins. And Lord, as we leave this meeting tonight, we ask that you guide us safely to our various abodes. These things we ask in your darling son, Jesus Christ's[,] name. Amen.

A Board member's son presented the following prayer on 23 September 2003:

> Almighty God, we make our earnest prayer that Thou wilt keep the United States in thy holy protection, that Thou wilt incline in the

16

hearts of the citizens to cultivate a spirit of subordination and obedience to government, and entertain a brotherly affection and love for one another and for their fellow citizens of the United States at large.

And finally that Thou wilt most graciously be pleased to dispose us all to do justice, to love mercy, and to demean ourselves with that charity, humility, and pacific temper of mind which were the characteristics of the Devine [sic] Author of our blessed religion, and without an [sic] humble imitation of whose example in these things, we can never hope to be a happy nation.

Grant our supplications, we beseech Thee, through Jesus Christ our Lord. Amen.

A School System elementary-school principal presented the following prayer on 18 May 2004:

Heavenly Father, we thank you for all the blessings that you have given us. Let us not take for granted that each breath that we take is a blessing from you, and even though we don't understand the hardships that are put before us at different times in our lives, let us always remember that the experiences that we go through have a purpose and even though we don't understand the purpose, it is your desire that we have each and every experience on this earth, for without you we have nothing.

Watch over our soldiers that are overseas. Please keep them safe. Please soften the hearts of our adversaries and help them see that we are trying to do what we believe is good and right and to bring freedom to people that have been oppressed.

Please guide all the people in this room that are in charge of setting the education of our children and setting the future of our children. Let all of us keep in mind that we have one focus and that is what is best for our children. Let us keep them at the front of all our decision-making processes. Let us do everything to bring glory and honor to your name, and we ask all of these things through Your Son, Jesus Christ. Amen.

17

In the final prayer included in the stipulations, a Board member presented the following on 15 June 2004:

> Father, we thank You for Your many blessings. Father, we are grateful for the opportunity to live in this country, the greatest country on this planet.  God, we have the freedom to choose, to live our lives as we please.  We have the opportunity to pursue any goals we so desire.
> Lord, this big Board — group of people meeting here tonight has an awesome responsibility to see that each and every child in the parish has the opportunity, and the chance to prepare themselves to the fullest to live their adult lives.  God, we just pray that we in this parish will have the guidance and the wisdom to make it happen.  In your name we pray. Amen.

It was *not* stipulated that the above four prayers were representative, or typical, of those offered at Board meetings. Each prayer in the stipulations is Christian in tenor, if not in fact.

On 3 August 2004, approximately ten months after this action was filed and only approximately one month before the consent judgment and joint stipulations, the Board considered — but unanimously rejected — a written policy that would have permitted *only* Board members to begin "meetings with a brief non-sectarian, non-proselytizing invocation to solemnize the occasion". Accordingly, the Board's unwritten practice of selecting speakers who give prayers of their own unrestricted choosing remained in effect.

18

This action seeks injunctive and declaratory relief. The district court held the prayers: fall outside the legislative-prayer context permitted by **Marsh v. Chambers**, 463 U.S. 783 (1983); and otherwise violate the Establishment Clause pursuant to the traditional analysis under **Lemon v. Kurtzman**, 403 U.S. 602 (1971). The court permanently enjoined the Board from opening its meetings with *any* prayer: "the [Board's] practice of opening each ... meeting with a religious invocation violates [Doe's] rights under the Establishment Clause of the First Amendment". **Doe v. Tangipahoa Parish Sch. Bd.**, No. 03-2870, slip op. at 25 (E.D. La. 24 Feb. 2005).

## II.

Neither in district court, nor on appeal, has the Board challenged Doe's standing to bring this action. Nor did the district court address it. Because standing is jurisdictional, however, we must address it *sua sponte* before considering this Establishment Clause issue of first impression in our circuit. **Doe v. Sch. Bd. of Ouachita Parish**, 274 F.3d 289, 292 (5th Cir. 2001); *see* **Bender v. Williamsport Area Sch. Dist.**, 475 U.S. 534, 547 (1986) ("This question the court is bound to ask and answer for itself, even when not otherwise suggested, and without respect to the relation of the parties to it.") (quoting **Mansfield, C. & L. M. Ry. Co. v. Swan**, 111 U.S. 379, 382 (1884)).

## A.

19

Neither of the separate opinions contests the following standing analysis. This inquiry has two components. First addressed are constitutional limitations, derived from the Constitution's case-and-controversy requirement in Article III; second, judicially-created prudential limitations are examined. *McClure v. Ashcroft*, 335 F.3d 404, 408 (5th Cir. 2003).

To establish Article III standing, Doe "must show that the conduct of which he complains has caused him to suffer an 'injury in fact' that a favorable judgment will redress". *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12 (2004) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). "[T]he concept of injury for standing purposes is particularly elusive in Establishment Clause cases". *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 294 n.31 (5th Cir. 2001) (alteration in original) (quoting *Murray v. City of Austin*, 947 F.2d 147, 151 (5th Cir. 1991), *cert. denied*, 505 U.S. 1219 (1992)). Our "rules of standing recognize that noneconomic or intangible injury may suffice to make an Establishment Clause claim justiciable". *Id.* (quoting *Suhre v. Haywood County*, 131 F.3d 1083, 1086 (4th Cir. 1997)). For example, direct exposure to a mandatory school-uniform policy satisfied the "intangible injury" requirement for Establishment Clause standing. *Id.* Parents and students challenged this policy, claiming, *inter alia*, its opt-out procedures "favor[ed] certain established religions at the expense

20

of other religions and thus violate[d] the Establishment Clause". *Id.* at 282.

In the context of the Establishment Clause, "we attach considerable weight to ... standing ... not [having] been an issue in the Supreme Court in similar cases". *Murray*, 947 F.2d at 151. For example, standing existed for a claimed Establishment Clause violation that had impaired "use or enjoyment of a public facility". *Sch. Bd. of Ouachita Parish*, 274 F.3d at 292.

Standing is bolstered when, as here, the plaintiffs are public school students and their parents, "who enjoy a cluster of rights vis-a-vis their schools" and thus transcend the realm of mere bystanders. *Id*. A parent may be permitted to bring an action as the next friend of his or her children; however, for an action for themselves as well, parents must "assert an injurious deprivation of their own legal rights or interests". *Ward v. Santa Fe Indep. Sch. Dist.*, 393 F.3d 599, 606 (5th Cir. 2004).

Doe appears to assert two standing bases: (1) as a parent of two students in the School System, he (as well as his two sons) has attended, and been offended by, Board meetings; and (2) as a resident and taxpayer of Tangipahoa Parish, where the school district is located. (Because we hold Doe has standing under the first basis, we need not address taxpayer standing.)

In his original 14 October 2003 complaint, Doe stated: he was "a domiciliary and resident" and "a taxpayer and registered voter"

of Tangipahoa Parish, and also the father of two school-system students; and he and his sons found "objectionable the non-secular manner in which the Board's meetings are conducted.... By commencing the meetings with a prayer, the Board is conveying its endorsement of religion". He noted explicit references to God and Jesus Christ at Board meetings. In seeking injunctive relief, Doe explained his family "ha[d] suffered, and will continue to suffer, immediate and irreparable harm in the event that [the Board is] allowed to continue permitting, authorizing, encouraging, and acquiescing in the delivery of ... religious invocations at the start of each board meeting".

As permitted by Federal Rule of Civil Procedure 15(a), Doe's 26 November 2003 amended complaint was filed before the Board answered. The amendment added: "Plaintiffs, John Doe, James Doe, and Jack Doe, have been in attendance at school board meetings which were opened with a prayer".

In its 26 January 2004 answer, the Board admitted its meetings were open to the public; it denied, but only for a lack of information, Doe's allegations regarding attendance and involvement. No mention was made whether Doe had standing to bring this action.

Instead, the parties on 30 August 2004 entered into the earlier-discussed consent judgment, which resolved all claims in Doe's complaint except his challenge to the Board's prayer practice. Four days later, on 3 September 2004, the parties

entered into the stipulations discussed *supra*. These stipulations did not address the standing issue directly, noting only that Doe was "a person of full age of majority and a resident and domiciliary of ... [Tangipahoa] Parish ... wherein he is a registered voter and taxpayer" and parent of two students within the School System. The remainder of the stipulations do *not* address Doe personally.

The Board's failure to challenge Doe's assertions that he attended Board meetings and was offended by their content was never challenged, beyond the lack-of-information denial in its answer, filed more than eight months before the consent judgment. As this action progressed, the Board had many opportunities — including during the bench trial — to contest Doe's standing; the Board's failure to challenge either Doe's attendance at Board meetings or his assertion that he was offended is the equivalent of an implied admission.

Although we have not located any precedent for this implied-admission concept regarding standing, we find it sufficiently analogous to the approach taken by Federal Rule of Civil Procedure 15(b). That rule states, in part: "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings". Similarly, the Board's decision to proceed on the merits of Doe's claim, without challenging either that he attended Board meetings or was offended by them, permits an inference that

23

the Board conceded these allegations in Doe's complaint.  Further, the Board's entering into the consent judgment and stipulations with Doe permits the inference that, had the Board disagreed with Doe's allegations that he attended Board meetings and was offended by its prayer practice, it would not have entered into the consent judgment and stipulations.  We may make such inferences from the record.  *Cf.* ***Ladue v. Chevron, U.S.A., Inc.***, 920 F.2d 272, 277 (5th Cir. 1991) (inferring from the record the cause of injury in a products liability action).  Nor do we have any reason to believe the interests of Doe, in his role as next friend, conflict with those of his sons.  In contrast, such a conflict arose in ***Newdow*** with evidence that the interests of a non-custodial father conflicted with those of his child.  542 U.S. at 15.

Based on the unchallenged allegations in the complaint, Doe has shown an injury; he and his sons have attended Board meetings and have been offended by the Board's prayer practice, which they "find wholly objectionable".  This suffices for a noneconomic, intangible injury under our Establishment Clause jurisprudence.  ***Littlefield***, 268 F.3d at 294 n.31.

Doe's injury, caused by that practice, would be redressed by an injunction against it.  Nothing has been offered to suggest that the Board did not comply with the one imposed by the district court, so Doe's injury appears sufficiently redressed by it.

Accordingly, three prudential factors are considered: (1) whether Doe's complaint fits "within the zone of interests protected by the ... constitutional provision at issue"; (2) "whether [his] complaint raises [more than] abstract questions amounting to generalized grievances which are more appropriately resolved by the legislative branches"; and (3) "whether [Doe] is asserting his ... own legal rights and interests", as opposed to those of third parties. *Murray*, 947 F.2d at 151 (quoting *Cramer v. Skinner*, 931 F.2d 1020, 1024 (5th Cir. 1991)). None of the prudential limitations bars Doe's standing: his assertion that the prayer practice of the Board, a political subdivision of the state, impermissibly "inject[s] religion" into Board meetings, fits within the zone of Establishment Clause claims; he raises not abstract, generalized grievances, but his own experiences at Board meetings; and, finally, he asserts both his own injury, as well as those of his sons as next friend. *Id*. (This ends the applicable portion of my panel opinion.)

* * * * * *

The foregoing panel-opinion analysis remains sufficient for our *en banc* court to hold standing present. In this regard, similar to the School Board's not questioning standing either in district court, or on appeal, it did *not* challenge it here until shortly before *en banc* oral argument, when our court required supplemental letter briefs on standing. In other words, even

25

though my panel opinion addressed standing *sua sponte*, the School Board did not question it in either its *en banc* petition or initial *en banc* briefs (in addition to its opening *en banc* brief, it was permitted to file a reply brief).

Again, parties cannot concede, or waive, standing as a question of law; but, certainly, we should accord considerable weight to the School Board's initial acceptance of my panel opinion's implied-admission analysis. Its silence until its ordered supplemental *en banc* brief on standing has, in effect, elevated its implied admission in district court for the facts necessary for standing to a judicial admission in our *en banc* court.

Restated, until our *en banc* court suggested otherwise, by requiring supplemental briefing, the School Board accepted my implied-admission analysis. The factual posture for standing did not change after the initial appeal, unlike the situation for our recent *en banc* mootness decision in **Staley v. Harris County**, 485 F.3d 305 (5th Cir. 2007) (*en banc*). Instead, apparently deciding that "half a loaf [possible dismissal on standing] is better than none [possibly losing on the merits]", the School Board suddenly decided standing is lacking, even though the underlying facts have not changed.

My implied-admission analysis does *not*, as the majority claims, "intimate[] that lower courts can infer standing from the

26

Supreme Court's decision in similar Establishment Clause cases where the issue was not ruled on by the Court". **Maj. Opn.** at 6. Rather, my analysis simply concludes that courts should hold standing exists when the parties repeatedly admit by implication the facts necessary to satisfy standing. Along that line, in taking me to task for supposedly "cit[ing] no authority [in my panel opinion] to support [my] implied-admission theory of standing", *id.* at 5, suggesting I attempted to sneak this analysis under the door, the majority goes far astray in two ways. First, my panel opinion does cite "authority" – by analogizing to Rule 15(b). 473 F.3d at 195. Second, my panel opinion candidly admits no "*precedent* [had been located] for this implied-admission concept". **Id.** (emphasis added). Surely, the majority recognizes courts must sometimes decide issues of first impression.

Concomitantly, standing must, of course, be viewed in context. *E.g., **Littlefield***, 268 F.3d at 294 n.31. Moreover, as reflected in my panel opinion, 473 F.3d at 194, standing is more relaxed for Establishment Clause claims, especially concerning schools. *E.g.,* **Lee v. Weisman**, 505 U.S. 577, 583 (1992) (holding plaintiff had standing to challenge future clergy-presence and prayers at a high-school graduation based on stipulated facts and assumptions concerning the offering and content of the prayers from an earlier middle-school graduation). For the majority to state that, in **Lee**,

27

"the Court did not reach the issue" of this relaxed standard is simply blinking at reality. *Maj. Opn.* at 6 n.7.

Regarding the Court's relaxed-standing standard, JUDGE DeMOSS' special concurrence arguably creates a majority on this point for our *en banc* court by agreeing standing is relaxed for Establishment Clause cases. MY BROTHER protests that the Supreme Court "speak[s] out of both sides of its mouth" on its "standing jurisprudence in [such] cases". *Spec. Con.* at 3. He posits that, while the Court has applied strict standing requirements in some Establishment Clause cases, in others, it "has implicitly, and wrongly in [his] view, assumed standing in [such] cases where plaintiffs have not alleged or proved an injury that would suffice to confer standing in any other type of case". *Id.* "Oh that mine enemy would write a book!" (This epigram, often used long ago by at least two outstanding lawyers (one now retired; the other, deceased) in my former law firm, is based on Job's lament: "Oh that my words were written! Oh that they were inscribed in a book!" THE BOOK OF JOB, 19:23.)

I disagree, of course, with JUDGE DeMOSS' assertion that the Court has been inconsistent. A fair reading of its opinions leaves no doubt standing is consistently more relaxed for such cases, as discussed above and in my panel opinion. In any event, by acknowledging the Court's employing this relaxed standard (but, in his view, only in some instances), JUDGE DeMOSS arguably agrees

28

with my recognizing this somewhat different standard for Establishment Clause cases. Therefore, for this point on the standing standard, he arguably crosses the aisle from the slim eight-seven majority on standing *vel non* to join the seven in dissent. As stated, his position arguably constitutes the eighth vote needed for an *en banc* majority recognizing this relaxed-standard rule. He's most welcome aboard. (As he makes quite clear, he concludes, however, that standing is lacking for this case.)

For the context of this case, in which all but one of the claims were settled shortly before trial and the parties entered into the above-described stipulations, the School Board, by implication, admitted the Does' allegations regarding attending the Board's meetings and being offended by the prayers.[1] In short, the well-known constitutional and prudential reasons for requiring standing are more than satisfied here. Surely, had the School Board felt the Does lacked standing, it would not have stipulated

---

[1] In unnecessarily calling the stipulations "woefully inadequate", the majority incorrectly characterizes an oral-argument answer by Doe's counsel, concerning stipulation 18, which stated *only* what the School Board's *testimony* would have been on a point. The stipulation did not state the Does agreed with the position that would have been asserted in that "testimony". The majority states that counsel "disagreed that this was a statement of fact". What counsel correctly pointed out was that the stipulation was *only* what the *Board's testimony would* have been. That is a "fact". But, contrary to the majority's characterization, counsel did *not* state that stipulations "are assertions that could be contradicted in the event of cross-examination". Instead, he stated correctly: the stipulation presented only the testimony the Board would have given; and the stipulation did not state the Does agreed with that testimony (position). The "cross-examination" comment apparently was simply an analogy to the procedure that would have been followed, had live testimony been given, instead of a stipulation presenting only one side's position on an issue.

29

as it did, including for the four prayers that had been presented at School Board meetings.  Those stipulations followed on the heels of a consent judgment concerning other challenged prayer events.

Simply put, the School Board more than recognized its requisite adversarial position with the Does.  This is consistent with the Does' *en banc* position for standing.  Contrary to the majority's interpretation of the Does' position, they did *not* "admit[] both in briefing and in oral argument to the en banc court that the *necessary proof* is absent from the record".  **Maj. Opn.** at 7 (emphasis added).  While admitting such evidence could certainly (and quite easily) have been more complete, the Does correctly maintained:  for deciding standing *vel non*, this action must be examined globally; and the record evidence is sufficient to provide a basis for holding standing present.

In opposition to this plain truth, the majority relies heavily on a Third Circuit opinion, **ACLU-NJ v. Township of Wall**, 246 F.3d 258 (3d Cir. 2001).  **Maj. Opn.** at 5.  (In doing so, the majority even notes three times the opinion was written by now-Justice Alito.  **Id.** at 5-6.  "None dare call it [pandering]."  *See* SIR JOHN HARINGTON, EPIGRAMS, bk. 4, no. 5 (1618) ("Treason doth never prosper, what's the reason?  For if it prosper, none dare call it treason.").)  **ACLU-NJ** is so distinguishable that one can only wonder why the majority would cite it, much less rely so heavily on it.   For starters, unlike here, defendants early on, and

30

consistently, contested standing.  246 F.3d at 261-62.  Moreover, unlike the implied-admission basis I employ under Rule 15(b), or the complementary basis employed by Judge Benavides under Rule 16 (the pretrial order), *ACLU-NJ* involved evidence having been presented concerning a holiday display in one year but relief having been requested instead for a quite different display in the next.  *Id.* at 266.

It is fundamental that courts have an independent duty to ensure standing.  My panel opinion did so *sua sponte*. Concomitantly, courts have a duty to recognize standing when it exists, as in this instance, and reach the merits.  Along that line, dismissing for lack of standing obviously has far more serious effects than, as the majority sugar-coats it, being "an inconvenience for the parties".  *Maj. Opn.* at 7.  The majority ignores reality – what transpired in district court and here – in holding standing lacking.

To find standing is not engaging in "speculation", as decried by the majority.  *Id.* at 7.  Far from it.  Instead, for the reasons stated in Judge Benavides' and my dissents, it is simply giving proper effect to the Federal Rules of Civil Procedure.  They do not treat differently from other situations the procedure to be utilized for considering parties' acts or omissions regarding the evidence necessary for satisfying standing.  Restated, the Rules contain no heightened exception for such evidence. Because the

31

majority commits a most grievous and unpardonable judicial sin of exalting form over substance, I dissent.  For many reasons, some more obvious than others, this is a sad day for our court.

BENAVIDES, Circuit Judge, with whom KING, DAVIS, WIENER, BARKSDALE, STEWART, and DENNIS, Circuit Judges, join, dissenting:

Disregarding months of active litigation, a bench trial in the district court, and three lengthy opinions on the merits by a panel of this Court, the majority today announces that the appellees never had standing to bring this suit in the first place. According to the majority, there is no proof in the record that the Does were ever exposed to, and thus injured by, a prayer offered at a School Board meeting. I disagree. The Does plainly alleged that they had attended Board meetings and that they had witnessed the invocations offered there, and the Pretrial Order reveals that the Board *conceded* this fact. Yet the majority sidesteps this record evidence, choosing instead to redraw the parameters of this dispute and assert that standing is now lacking. I dissent.

In their amended complaint, filed with the district court on November 26, 2003, the plaintiffs stated:

> The Board meetings are open to the public, including students. Each Board meeting is opened with a prayer, followed by the pledge of allegiance. Board member Bardwell[] has given the invocation. *Plaintiffs, John Doe, James Doe, and Jack Doe, have been in attendance at school board meetings which were opened with a prayer.*

Amd. Compl. ¶ 9 (emphasis added). In its answer, filed on January 26, 2004, the School Board denied the claim of attendance, but only for lack of information:

> The allegation that meetings of the board are open to the public is admitted. The remaining allegations of

33

> Paragraph 9 are denied for lack of information sufficient to justify a belief therein.

Answ., Part VII, ¶ 9. Thus did the parties set the stage for the district judge: The plaintiffs alleged the crucial fact, plain as day, and the School Board responded that it did not yet have enough information to either admit or refute it.

At that time, the fact was legitimately in dispute. Seven months later, however, it was not. We know this much not due to any inference or assumption on our part, but because the district judge and the parties told us so in the Pretrial Order of August 18, 2004. That Order contains an enumerated list entitled "CONTESTED ISSUES OF FACT." Pretrial Order at 10. Conspicuously absent from that list is anything about the Does' attendance at the Board meetings. In other words, as of August 18, 2004, the School Board *no longer contested* the factual allegation that the Does had attended Board meetings. The only contested facts at that point relate to the merits of the case; they have nothing at all to do with standing.[1]

---

[1]     The list reads as follows:

VIII.  CONTESTED ISSUES OF FACT

1.    Whether the meetings of the Tangipahoa Parish Board are an integral component of the Tangipahoa public school system?

2.    Whether the opening of meetings of [a] public school board, particularly the Tangipahoa Parish School Board, with prayer is deeply embedded in the history of this country?

3.    Whether public school boards are legislative and deliberative bodies akin to state legislative bodies?

4.    Whether the act of board members, particularly Reverend

34

The Order goes on to say that if necessary, the plaintiffs could call John, James and Jack Doe to testify, and that all three would testify regarding the "[f]acts set forth in original and amending complaints, particularly the events transpiring at the Tangipahoa Parish School Board Meeting."[2]  It explains that such live testimony may not be necessary, however, because "[t]he issue in this case is *purely legal*."  Pretrial Order at 13 (emphasis added).  This proved to be true.  The parties agreed to have the case tried before a judge on stipulations, and no live witnesses were called to testify.  This was possible solely because there were no longer any relevant facts in dispute, so no witness testimony, including that of the Does, was necessary.  Viewed in context, the Pretrial Order and the pleadings provide ample record

Richardson, the board president, and the assistant superintendents, initiating and leading everyone in prayer prior to the commencement of board meetings sends a loud, clear message that the board favors religion and, in this case, Christianity?

5.  Whether prayers given to solemnize present the same "coercive effect" inherent in the classroom at school-sponsored events like a football game?

6.  Whether Defendants have exploited the board's practice of opening its meetings with a prayer to proselytize or advance any one, or to disparage any other, faith or belief?

7.  The amount of attorneys' fees and costs, if any, Plaintiffs are entitled to recover[.]

8.  All issues of fact implicit in the contested issues of law.

Pretrial Order at 10.

[2]     As has already been said, the amended complaint specifically asserts that the Does attended Board meetings and witnessed prayers. The original complaint states that they were offended by those prayers. See infra note 5.

evidence that there was not, and indeed is not, any dispute about the fact of the Does' attendance at the meetings.

This conclusion becomes all the more certain when we consider the nature and importance of pretrial orders in litigation. Federal Rule of Civil Procedure 16(e) states that pretrial orders "shall control the subsequent course of the action unless modified by a subsequent order." FED. R. CIV. P. 16(e). One purpose of the pretrial order is to put the parties on notice as to the evidence they must be prepared to present. Morris v. Homco Int'l, Inc., 853 F.2d 337, 342 (5th Cir. 1988) ("The purpose of Rule 8(c), like the purpose of the requirement that the pretrial order contain all relevant claims and legal theories, is to inform the court and the parties how the case will be tried."). In Shell Oil v. M/T GILDA, 790 F.2d 1209 (5th Cir. 1986), we explained as follows:

> *A party need not offer proof as to matters not contested in the pre-trial order.* A contrary holding would be inconsistent with the requirement that the pre-trial order "shall control the subsequent course of the action unless modified by subsequent order". Indeed, such a holding would not be consonant with the requirement of the first rule of the Rules of Civil Procedure: The rules "shall be construed to promote the just, speedy, and inexpensive determination of every action".

Id. at 1215 (citing United States v. First Nat'l Bank of Circle, 652 F.2d 882, 886 (9th Cir. 1981); FED. R. CIV. P. 1, 16(e)) (emphasis added). To dismiss this case now for lack of standing violates that closing maxim, but worse yet, it creates a contested fact question where the parties and the district judge agreed there was not one.

36

Rule 16 and our precedent could not be more clear:  Pretrial orders control the scope of the trial, and those facts not contested in the pretrial order are not up for debate at a later date, even if a majority of this court now wants to debate them. Since 1986, we have told litigants that "[a] party need not offer proof as to matters not contested in the pre-trial order."  Id. Today we are telling the Does that they had to do just that.  This is not merely an "inconvenience" for the parties (and the district court); it is trial by ambush.  First Nat'l Bank of Circle, 652 F.2d at 886 ("Disregard of these principles would bring back the days of trial by ambush and discourage timely preparation by the parties for trial.").[3]  "Unless pretrial orders are honored and enforced, the objectives of the pretrial conference to simplify issues and avoid unnecessary proof by obtaining admissions of fact will be jeopardized if not entirely nullified."  Id. (citing FED. R. CIV. P. 16).

The Pretrial Order in this case was perfectly typical.  It came about as the product of a pre-trial conference held before the

---

[3]     Ordinarily when we use this term, it is to express our concern that one party might ambush another.  The irony in this case is that the trap was set not by one of the parties, but by a majority of this en banc Court.  In fact, the parties conscientiously worked to move this case forward toward a ruling on the merits in a timely fashion.  They conducted a productive pretrial hearing; they entered into a consent judgment that disposed of seven of the eight original claims; they stipulated to all the necessary and relevant facts.  They simply wanted an answer to the constitutional question presented.  Small wonder, then, that the School Board did not mention standing in either its original or its en banc brief, the latter of which was filed after the panel addressed the question sua sponte.   The reason for this is not that the School Board overlooked standing, but that standing was no longer an issue, nor could it have been given the procedural history of the case.

37

district judge. It concludes with a very explicit statement drawn directly from FED. R. CIV. P. 16:

> This Pre-Trial Order has been formulated after a conference at which counsel for the respective parties have appeared in person. *Reasonable opportunity has been afforded counsel for corrections, or additions, prior to signing. Hereafter, this order will control the course of trial* and may not be amended except by consent of the parties and the Court, or by order of the Court to prevent manifest injustice.

Pretrial Order at 14 (emphasis added). The order is signed by the district judge and counsel for both parties. The parties must be held to their word, and we must be held to ours. The pretrial order controls, and the fact of the Does' attendance is not up for debate.[4]

The record bears out that the Does attended School Board meetings at which prayers were offered. That exposure gave them

---

[4] The majority suggests in passing that the clause leaving open "[a]ll contested issues of fact implicit in the contested issues of law" can be read to encompass the facts at issue today. See supra note 1 (setting forth "Contested Issues of Fact"). This is a misreading of the clause, which does not refer generally to *any* issues of law that may someday become contested, but rather to the specifically enumerated "Contested Issues of Law," set forth in the Pretrial Order. None of those issues has anything at all to do with standing, nor can any of them be read to implicate the discrete fact of the Does' attendance at the Board meeting. Of course, standing has become a contested issue now, but this is not the sort of legal contest that was envisioned or encompassed by the Pretrial Order.

Moreover, by the time this case went to trial, the parties had entered into a consent judgment that left the court with only a single "contested issue of law" to decide: Which case, Lemon or Marsh, governs prayers at a School Board meeting? The Does' attendance at the Board meeting is not "implicit" in that legal question. The Does' attendance is implicated only by the question of standing, which is wholly separate from the merits of the case. See Warth v. Seldin, 422 U.S. 490, 498 (1975) ("In essence, the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues."); Whitmore v. Ark., 495 U.S. 149, 155 (1990) (quoting Warth v. Seldin, supra, 422 U.S. at 500) ("[The] threshold inquiry into standing 'in no way depends on the merits of the petitioner's contention that particular conduct is illegal.'").

standing to bring this suit then, and it gives them standing to maintain it now.[5]  They are entitled to a decision on the merits, and we should give them one.  I dissent.

---

[5]     Of course, this evidence speaks only to the "injury in fact" prong of the standing analysis, but that is the only prong at issue in this case. Neither the majority nor the School Board has suggested that this case poses any problems of causation or redressability.  See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 472 (1982) (discussing three factors).  I note also that, though I have focused solely on the question of the Doe's attendance, there is also no dispute that the Does were offended by the prayers they witnessed, which is necessary to show injury in fact.  They explicitly alleged as much in their original complaint, see Orig. Compl. ¶ 14., and this fact was not in dispute by the time the parties and the court signed the pre-trial order.